[TAGGED OPINION]



**ORDERED in the Southern District of Florida on April 19, 2010.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

---

In re:

ALL AMERICAN SEMICONDUCTOR, INC., *et al.,*

        Debtors.

_____/

Case No. 07-12963-BKC-LMI
(Jointly Administered)

Chapter 11

AASI CREDITOR LIQUIDATING TRUST, by and through Kenneth A. Welt, Liquidating Trustee, pursuant to the confirmed Third Amended Plan of Liquidation of The Official Committee of Unsecured Creditors,

        Plaintiff,

v.

RAYMOND JAMES & ASSOCIATES, INC.,

        Defendant.

Adv. Pro. No. 09-01469-LMI

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter came before the Court on August 3, 2009 on the Motion to Dismiss filed by Defendant Raymond James & Associates, Inc. (DE #13). The Court has considered the Motion to Dismiss, the Response thereto filed by the Plaintiff (DE #24), and the Reply (DE #26) filed by the Defendant, as well as the arguments of counsel. Having considered the foregoing, the

Complaint, and the applicable law, and for the reasons set forth below, the Motion to Dismiss is Granted.

## JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157. The jurisdiction of the bankruptcy courts is set forth in 28 U.S.C. §1334, which provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). 28 U.S.C. §157(b) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. §157(b). This matter is a core proceeding under 28 U.S.C. §157(b). To the extent that any of the claims asserted in the complaint are not "core" claims, the Court, at the very least, has "related to" jurisdiction since all of the state law claims "could conceivably have an effect on the estate being administered in bankruptcy." *Century 21 Real Estate, LLC v. Prestige Realty Group of Ohio & Florida, LLC* (*In re Prestige Realty Group of Ohio & Florida, LLC*), 420 B.R. 894, 898 (Bankr. S.D. Fla. 2009). The following constitute the Court's findings of fact and conclusions of law.

## BACKGROUND[1]

All American Semiconductor, Inc. ("All American") and thirty-three of its subsidiaries and affiliates (collectively the "All American Group")[2] filed for protection under Chapter 11 of

---

[1] These facts are set forth in the Complaint or in the Court docket, including transcripts of various hearings.
[2] All American Semiconductor, Inc., Case No. 07-12963-BKC-LMI; Access Micro Products, Inc., Case No. 07-12967; All American A.V.E.D., Inc., Case No. 07-12969; All American Added Value, Inc., Case No. 07-12970; All American Semiconductor of Atlanta, Inc., Case No. 07-12972; All American Semiconductor of Canada, Inc., Case No. 07-12998; All American Semiconductor of Chicago, Inc. 07-12973; All American Semiconductor of Florida, Inc., Case No. 07-12974; All American Semiconductor of Huntsville, Inc., Case No. 07-12976; All American Semiconductor of Massachusetts, Inc., Case No. 07-12977; All American Semiconductor of Michigan, Inc., Case

2

the Bankruptcy Code on April 25, 2007 (the "Petition Date"). In addition to other typical first day motions, the Debtors also filed their Emergency Application for an Order under 11 U.S.C. §§327(a) and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing the Retention and Employment of Raymond James & Associates, Inc., as Financial Advisor and Investment Bankers to the Debtors *nunc pro tunc* to the Petition Date (DE #16). The Court entered an interim order approving the employment (DE #86) and set a final hearing on all retention motions for May 17, 2007.

All American originally engaged Raymond James & Associates, Inc. ("Raymond James") in November of 2005 to provide a variety of financial services. Raymond James' engagement was modified by letter agreement in June, 2006 and Raymond James was engaged to provide investment banking services to the All American Group. The scope of that engagement was further expanded in November, 2006 primarily to refinance or sell the business. Several, if not all, of the All American Group had been suffering from financial difficulties at least a year prior to the filing of the All American Group bankruptcy petitions. Raymond James did not locate either a buyer, a source of new financing or a strategic partner for the All American Group. However, during the nine months prior to bankruptcy, All American paid Raymond James approximately $330,000 in fees.

The Debtors also filed on that first day their Emergency Motion of the Debtors Pursuant to 11 U.S.C. §§105(A), 363 and 365 for Entry of an Order (A) Approving Sale of All or

---

No. 07-12978; All American Semiconductor of Minnesota, Inc., Case No. 07-12979; All American Semiconductor of New York, Inc., Case No. 12981; All American Semiconductor of Philadelphia, Inc., Case No. 07-12983; All American Semiconductor of Phoenix, Inc., Case No. 07-12984; All American Semiconductor of Portland, Inc., Case No. 07-12985; All American Semiconductor of Rockville, Inc., Case No. 07-12987; All American Semiconductor of Salt Lake, Inc., Case No. 07-12988; All American Semiconductor of Texas, Inc., Case No. 07-12989; All American Semiconductor-Northern California, Inc., Case No. 07-12993; All American Semiconductor of Washington, Inc., Case No. 07-12990; All American Technologies, Inc., Case No. 07-12995; All American Transistor of California, Inc., Case No. 07-12996. The 34 bankruptcy cases are jointly administered under Case No. 07-12963.
.

Substantially All of the Debtors' Assets Outside the Ordinary Course of Business Free and Clear of All Liens and Encumbrances (DE #24) (the "Sale Motion").  Attached to the Sale Motion in support of the relief was the affidavit of Mr. Rahjinder Singh of Raymond James.  On May 1, 2007, the Court entered an Order Granting the Sale Motion (DE #78) (the "Interim Sale Order") approving of all the proposed sales procedures, including the bid procedures, the marketing and the timing of the auction.  The auction was scheduled for May 31 and the sale hearing set for June 5.

On May 15, 2007, the Official Committee of Unsecured Creditors (the "Committee") filed its Limited Objection to the Retention and Employment of Raymond James (DE #192) objecting primarily to the compensation terms of the proposed engagement.  Additional objections to the retention of Raymond James were raised by the U.S. Trustee at the May 17 hearing.  On May 21, 2007, the Court entered a Final Order Approving the Retention of Raymond James (DE #265) (the "Retention Order"). In connection with the Retention Order, Raymond James and the Debtors executed another engagement letter.

On June 5, 2007, the Court conducted the sale hearing.  The results of the auction were confirmed and on June 6, 2007, the Court entered a Final Order Approving the Sale of Substantially all of the Debtor's Assets (DE #363) (the "Final Sale Order").

On August 21, 2007, Raymond James filed its Final Fee Application (DE #562), to which both the Committee (DE #688) and the United States Trustee (DE #690) filed objections.  Each objection challenged the reasonableness and appropriateness of the fees in light of the terms of the post-petition engagement letter and the results achieved.  The Court conducted an evidentiary hearing on the Final Fee Application on January 14, 2008 and on January 28, 2008 entered an Order Granting the Final Fee Application (DE #824) (the "Final Fee Order").

The All American Group bankruptcy cases proceeded through the confirmation of the Committee's Third Amended Plan of Liquidation (the "Plan") which was confirmed by order dated April 10, 2009 (DE #1175) (the "Confirmation Order"). Pursuant to the Plan, the AASI Liquidating Trust was created and Kenneth Welt, who had been acting as the sole officer of the various Debtors, was appointed the Liquidating Trustee.

### The Adversary Proceeding

The Plaintiff filed this adversary proceeding on April 24, 2009. The nine count complaint seeks to recover, on a variety of theories including breach of contract, fraudulent transfer and unjust enrichment,[3] various damages and payments made to Raymond James during the course of its pre-petition employment, including the $330,000 paid to Raymond James in the nine months preceding the Petition Date.

Raymond James seeks dismissal of the complaint on a variety of grounds including *res judicata,* collateral estoppel and law of the case. Because the Court agrees that all the relief sought in the complaint is barred by *res judicata* or collateral estoppel, the Court grants the motion to dismiss.

---

[3] Count I – Breach of contract for Raymond James' failure to perform its duties under the various engagements. Damages are unspecified.
Count II – Recovery of Fraudulent Transfer under Fla. Stat. §§726.105(1)(b), 726.106(1) and 726.108 seeking recovery of all payments for services from the beginning of the engagement because All American received less than reasonably equivalent value for the services.
Count III – Recovery of Fraudulent Transfer under Fla. Stat. §§ 726.105(1)(a) and 726.108 seeking recovery of compensation during the two years preceding bankruptcy; it isn't clear whether recovery is sought for compensation paid to Raymond James or paid to All American's management.
Count IV – Avoidance and Recovery of Preferential Transfers seeking recovery of all payments made to Raymond James within the ninety days preceding bankruptcy.
Count V – Aiding and abetting breach of fiduciary duty by All American's management team seeking recovery of compensatory and special damages.
Count VI – Unjust enrichment seeking recovery of unspecified damages.
Count VII – Negligence alleging Raymond James did not perform its duties up to industry standards and seeking recovery of compensatory and special damages.
Count VIII – Malpractice seeking recovery of compensatory and special damages.
Count IX – Objections to claims asserting that until the avoidable transfers are repaid, Raymond James isn't entitled to a claim.

## THE STANDARD FOR REVIEW

Federal Rule of Civil Procedure 12(b)(6), as made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides a mechanism by which a party may seek to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, a plaintiff must allege more than "labels and conclusions," or simply recite the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is considered factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Failure to state a claim for relief is a purely legal question. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1270 n.19 (11th Cir. 2009). The courts have the authority to "fully resolve any purely legal question" on a motion to dismiss and consequently, there is no "inherent barrier to reaching the merits [of a claim] at the 12(b)(6) stage." *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court must consider the complaint "in its entirety," and must also consider "other sources" including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* Courts may take judicial notice of public records including proceedings in its own docket as well as proceedings in other courts without the need to convert a motion to dismiss into a motion for summary judgment. *Accord Universal Express, Inc. v. United States Securities and Exchange Comm'n*, 2006 WL 1004381, at *2 (11th Cir. April

8, 2006) (case not selected for publication). In support of the Motion to Dismiss, Raymond James relies on several pleadings filed in the All American Group bankruptcy cases, several orders entered by this Court, as well as transcripts of several hearings conducted the bankruptcy cases. It is appropriate for the Court to consider these pleadings, orders and transcripts in the context of the motion to dismiss; it is not necessary, however, for the Court to treat the motion to dismiss as a motion for summary judgment, and no party has asked the Court to do so.[4]

Having reviewed the Complaint, the Motion to Dismiss, the various pleadings, and orders and transcripts in the bankruptcy cases, the Court finds that as a matter of law the Complaint should be dismissed.

## THE BINDING IMPACT OF RETENTION AND FEE ORDERS: *RES JUDICATA*, COLLATERAL ESTOPPEL AND THE LAW OF THE CASE

*Res judicata*, collateral estoppel and the law of the case are three distinct but related court-created rules designed to promote judicial efficiency and systemic consistency. The Eleventh Circuit has laid out the test for each rule and the distinctions between them.

> Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." … [W]e refer to this strand of former adjudication as "claim preclusion." … If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." … We refer to this strand of former adjudication as "issue preclusion." …

---

[4] Fed. R. Civ. P. 12(d) allows for the conversion of motions to dismiss into motions for summary judgment. Rule 12(d) provides, in pertinent part, that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

7

> Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it *must,* and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case."
>
> … While the law of the case does not bar litigation of issues "which might have been decided but were not,"… it does require a court to follow what has been decided explicitly, as well as by necessary *implication,* in an earlier proceeding, … The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. … Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.

*Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (citations omitted) (emphasis in original).

Raymond James argues that Plaintiff is barred from bringing the complaint by virtue of the Retention Order, the Final Sale Order and the Final Fee Order.

### *Res Judicata*

In order for future litigation to be barred by *res judicata,* the party seeking relief must show each of the following with respect to the order or judgment upon which the relief is based:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process … Second, the judgment must be final and on the merits … Third, there must be identity of both parties or their privies … Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*In re Justice Oaks II, Ltd.*, 898 F.2d at 1550 (internal citations omitted).

If a court finds that all the requirements of *res judicata* have been satisfied, then the prior order or judgment shall act as a bar to litigating any claim that was or could have been brought in the prior proceeding. Of course, for purposes of *res judicata*, "claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." *Kaiser Aerospace and Elecs. Corp. and PAQ, Inc. v. Teledyne Indus. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1299 (11th Cir. 2001) (emphasis removed) (internal citations omitted). Thus, "[r]es judicata may not bar a later suit where the plaintiff was not aware of its claim at the time of the first litigation." *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009); *see, e.g., BCPM Liquidating LLC v. PricewaterhouseCoopers, LLP (In re BCP Mgmt., Inc.)*, 320 B.R. 265 (Bankr. Del. 2005) (The court granted in part a motion to dismiss complaint seeking return of several allegedly preferential transfers to a bankruptcy professional holding that, based on *res judicata,* the retention order acted as a bar to recovery of two transfers that were disclosed in the retention application process and prior to entry of the order approving retention. However, *res judicata* did not bar an action seeking recovery of previously undisclosed transfers).

When determining the preclusive effect of a retention order or fee order, the jurisdiction of the bankruptcy court is not an issue. Moreover, the identity of the parties is not generally a subject of dispute – the plaintiff in the various actions is usually the reorganized debtor or a trustee or liquidating trustee who has succeeded to, and is pursuing, the rights of the debtor in respect of the litigation. The "final order" requirement is problematic when reviewing the preclusive effect of a retention order. At least one court has held that the retention order has no preclusive effect because "[a]n order approving employment, allowing interim fees, or denying

disqualification of a professional is not a final, appealable order." *Winship v. Cook (In re Cook)*, 223 B.R. 782, 792 (B.A.P. 10th Cir. 1998). Indeed, as the Bankruptcy Code and Bankruptcy Rules require, a professional is under a continuing duty to disclose any potential conflicts, some of which may predate the retention order but either are unknown and inadvertently omitted, or information is deliberately withheld. *See Miller Buckfire & Co. v. Citation Corp.* (*In re Citation Corp.*), 493 F.3d 1313, 1321 (11th Cir. 2007) (noting that "under [Fed. R. Bankr. P. 2014(a)], (1) full disclosure is a continuing responsibility, and (2) [a professional] is under a duty to promptly notify the court if any potential for conflict arises.") To hold that a final order approving retention has any *res judicata* effect on "claims that could have been raised" would render meaningless the Bankruptcy Code's continuing disclosure requirement. As numerous courts have held, "a statute should be interpreted so as not to render one part inoperative." *See, e.g.*, *Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985). However, other courts have held that a retention order can be final for purposes of resolving an issue even if it is not final for purposes of appeal. *See*, *e.g.*, *Schnelling v. Rothschild Inc.* (*In re James River Coal Co.*), 2008 WL 764215 (M.D. Tenn. March 21, 2008) (case not selected for publication).

     The most significant debate amongst the courts is whether the issues involved in a retention hearing or a final fee hearing involve the "same cause of action" as that alleged in the complaint against which the bar is sought. What is the same cause of action has been framed by the Eleventh Circuit. "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of *res judicata*." *In re Piper Aircraft Corp.*, 244 F.3d at 1297.

Several courts have held that an order approving retention can bar future litigation based on *res judicata* where the facts underlying the future litigation were disclosed prior to the retention hearing and not raised as a basis to question disinterestedness. In *In re James River Coal Co.*, the district court held that the trustee of a liquidating trust could not sue Rothschild Inc. for return of transfers made by the debtor to Rothschild Inc. within ninety (90) days prior to the bankruptcy case. The court observed that the transfers were disclosed prior to the retention hearing, and, while no details of the transfers were disclosed, no objection was raised seeking additional information about the transfers, what payments were made during the preference period, or, in fact, whether Rothschild, Inc. was "disinterested". *Id.* at *7. The only objections raised to retention were directed to the level of court review of the fees and proposed indemnification provisions.

> The undisputed facts remain that the Debtors and Rothschild disclosed the pre-petition payments and the Trustee had notice of those payments … [t]he same essential facts that were or could have been litigated in the retention proceeding and Rothschild's Final Application for payment – before the Bankruptcy Court entered its Orders approving retention and final payment – would now be re-litigated in the Trustee's adversary action, which is identical to the prior opportunities to litigate these issues.

*Id.* at *8.

Courts more commonly find that a final fee order is a bar to any claim that was or could have been raised at the time the final fee application is considered. A bankruptcy professional may be awarded "reasonable compensation for actual, necessary services." 11 U.S.C. §330(a)(1)(A). 11 U.S.C. §330 outlines the criteria the court must consider when determining the amount of reasonable compensation to be awarded to an estate professional. "The court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

>   (A) the time spent on such services;
>   (B) the rates charged for such services;
>   (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>   (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>   (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. §330(a)(3).

Thus, in *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc*.), 200 F.3d 382 (5th Cir. 2000), the court affirmed the lower courts' granting of summary judgment in favor of a bankruptcy professional in a suit by a bankruptcy trustee seeking a judgment for negligence and malpractice. In the *Interlogic Trace* case, Ernst & Young had served as a bankruptcy accounting professional to Intelogic Trace in a prior bankruptcy proceeding. Prior to entry of an order awarding Ernst & Young compensation in accordance with its final fee application in the prior case, the debtor's management had raised concerns with Ernest & Young about the quality of some of those services including certain financial projections prepared in connection with confirmation. In response to those concerns, Ernst & Young voluntarily reduced its fee request and the final fee order was entered. The debtor did not stay out of bankruptcy very long, due, in part, allegedly, to mistakes made by Ernst & Young in its projections. When Intelogic Trace went back into bankruptcy, the chapter 7 trustee sued Ernest & Young for negligence and malpractice. In granting summary judgment in favor of Ernst & Young, the circuit court held

that the malpractice and negligence claims arose from the same transaction[5] as those matters considered as part of the final fee award entered in the prior case (the provision of accounting services during the prior chapter 11) and therefore the order awarding Ernest & Young's final fee application barred the complaint. *Id.* at 388.

This same issue was considered by the D.C. Circuit in *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009). In the *Capitol Hill* case, the circuit court affirmed the district court's grant of summary judgment in favor of a former bankruptcy professional sued for malpractice by a reorganized debtor. Shaw, Pittman had represented Capitol Hill Group ("CHG") as bankruptcy counsel. At some point during the case, the parties became disenchanted with one another. Citing to the *Intelogic Trace* case, the circuit court held the malpractice case was barred by the *res judicata* impact of the bankruptcy court's order allowing Shaw, Pittman's fees, and it upheld the district court's finding that "all three counts of the plaintiff's complaint (legal malpractice, breach of contract and breach of fiduciary duty), arose from the same nucleus of facts as the fee application disputes that were previously decided in bankruptcy court." *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d 143, 149 (D.D.C. 2008), *aff'd* 569 F.3d 485 (D.C. Cir. 2009); *see also Grauz v. Englander*, 321 F.3d 467 (4th Cir. 2003) (Final fee order barred subsequent malpractice action arising out of services rendered in bankruptcy case when debtor knew or should have known he had a malpractice claim against the lawyer); *Iannochino v. Rodolakis* (*In re Iannochino*), 242 F.3d 36 (1st Cir. 2001) (same).

However, in *Schulte, Roth & Zabel, LLP v. Hyman*, 2006 WL 1643329 (M.D. Fla. June 7, 2006) (case not selected for publication), the district court declined to dismiss a preference

---

[5] The Fifth Circuit applied the transactional test of the Restatement (second) of Judgments. *In re Intelogic Trace, Inc.*, 200 F.3d at 386. This is the same test used by the Eleventh Circuit in determining whether causes of action are the same for purposes of *res judicata*. *See In re Justice Oaks II, Ltd.,* 898 F.2d 1544 .

action, holding that a prior retention order and final fee application did not bar the preference action because the pre-petition fees at issue were not related to the bankruptcy case,[6] and while disclosed, had not been disclosed in sufficient time for any party to conduct discovery as to the nature of the services.[7]

### Collateral Estoppel

Collateral estoppel will bar relitigation of issues actually dealt with in a proceeding:

> The party seeking to invoke collateral estoppel must establish that (1) the issue in the pending case is identical to that decided in a prior proceeding; (2) the issue was necessarily decided in the prior proceeding; (3) the party to be estopped was a party or was adequately represented by a party in the prior proceeding; and (4) the precluded issue was actually litigated in the prior proceeding.

*United States v. Weiss*, 467 F.3d 1300, 1308 (11th Cir. 2006).

Thus, a later claim arising from a relationship will be barred by collateral estoppel if that claim was actually litigated as part of the process leading up to entry of an order. *See Shaw v. Replogle* (*In re Shaw*), 2000 WL 1897344, at *7 (N.D. Cal. 2000) (case not selected for publication) (The district court held that a former debtor's suit for professional negligence arising out of a law firm's representation during her bankruptcy was barred not only by *res judicata*, but also by collateral estoppel as the bankruptcy judge specifically considered the allegations of malpractice when awarding fees to the law firm).

---

[6] There is a split among the courts whether and to what extent an attorney may be sued to recover a preference or fraudulent transfer when the payment in question is "for services rendered or to be rendered in contemplation of or in connection with the case by such attorney." 11 U.S.C. §329(a). While some courts have held that such an action is appropriate, *see, e.g., In re BCP Mgmt., 320 B.R. 265*, most courts have held that, pursuant to section 329 and Federal Rule of Bankruptcy Procedure 2017, no such cause of action may be pursued. *See, e.g., In re Creative Rest. Mgmt.,* 139 B.R. 902 (Bankr. W.D. Mo. 1992). This Court is inclined to agree with the latter view – such fees are measured by the reasonableness standard and are subject, if appropriate, to disgorgement, but not through either a preference or fraudulent transfer action.

[7] The court also noted the plaintiff – a disbursing agent under a liquidating plan - was not appointed until after the retention order was entered and therefore did not have an opportunity to object at the time of retention. The opinion does not address the disbursing agent's authority under the plan, but if the agent was successor to the debtor, then this observation by the court appears incorrect.

## THE COMPLAINT IS BARRED BY
## *RES JUDICATA* AND COLLATERAL ESTOPPEL

The relief sought by the Plaintiff in the complaint is barred by *res judicata* and collateral estoppel. In each count of the complaint, the Plaintiff seeks recovery on the grounds that the pre-petition services provided by Raymond James to the All American Group provided no benefit and, therefore, any payment made by the Debtors to Raymond James on account of those valueless services is recoverable under one or more of the theories set forth in the complaint's various counts. However, not only were the nature, extent and value of, and payment for, the Raymond James pre-petition services raised and addressed at the retention hearing, these very issues were argued to, and ruled upon by, the Court in approving Raymond James' final fee application.[8]

On several occasions Raymond James and the Debtors disclosed that Raymond James' pre-petition relationship with the Debtors began in November 2005 and disclosed the fees paid to Raymond James in the year prior to bankruptcy, together with details of the services provided by Raymond James to the Debtors in exchange for those services. In addition to the affidavits filed by Mr. Singh, one in support of his retention dated April 25, 2007 (DE #16-1) and one in support of the Sale Motion dated April 25, 2007 (DE # 24-1), Mr. Singh also testified extensively in court[9] regarding those pre-petition services. Indeed, Mr. Singh's testimony regarding Raymond James' pre-petition marketing efforts on behalf of the Debtors was instrumental in the Court's approval of a sale process to take place over a period of less than five weeks. At no time,

---

[8] Raymond James correctly points out that the nature and quality of the Raymond James pre-petition services were specifically addressed by the Court in connection with the hearing on the Sale Motion, the Interim Sale Order, and the ultimate entry of the Final Sale Order. Because the Court has held the Final Fee Order has a preclusive effect on any recovery sought in the Complaint, the Court will not address Raymond James' law of the case argument with respect to the sale-related proceedings except as those findings were specifically addressed at the final fee hearing.

[9] *See* Transcript of All Motions on Calendar dated April 27, 2007 (DE #261) and Transcript of All Motions on Calendar dated May 1, 2007 (DE #260) (also attached to the Motion to Dismiss as Exhibits B and C respectively).

including in the Committee's objection to sale dated June 4, 2007 (DE #350), did the Committee question the quality or efficacy of any of Raymond James' pre-petition efforts on behalf of the Debtors even though the issue of some of the more recent of Raymond James' pre-petition efforts were critical elements of the sale process.

The Court held a final hearing on Raymond James' retention on May 17, 2007. Prior to that hearing, the Committee filed its limited objection which, among other grounds, objected to the proposed compensation as too generous – comparing Raymond James total fees of $330,000 paid in the nine months prior to bankruptcy to the proposed $100,000 monthly advisory fee post-petition. At the May 17 hearing, Mr. Lerner, counsel for debtor, announced that the Debtors had resolved all the objections raised by the Committee to the retention of Raymond James other than whether the $100,000 monthly advisory fee should be a credit towards any ultimate success fee.

When the Committee filed its objection to Raymond James' final fee application, the Committee argued that, in determining the ultimate reasonableness of the fees to be paid to Raymond James in connection with the sale of the assets, the Court necessarily had to include in the calculation the $330,000 paid to Raymond James pre-petition. When including those pre-petition fees, the Committee argued, the total fees proposed to be paid to Raymond James in connection with the auction were too high. At the hearing on the final fee application, the transcript indicates the Committee withdrew its reasonableness argument, leaving the U.S. Trustee to raise that challenge. The U.S. Trustee apparently did so, since the transcript reflects that the Court explicitly took into account Raymond James' pre-petition services relating to the marketing of the assets and the payment for those services in ruling that the fees sought by Raymond James in its final fee application were reasonable:

> Although I do recognize the U.S. Trustee's argument that I should take into account the efforts that were made by Raymond James pre-petition, based on my express recollection of Mr. Singh's testimony at the sale hearing, there was a tremendous amount of effort, both prior to the petition being filed and post-petition, and that those efforts should be recognized and the fees would be reasonable based on that.

January 14, 2008 Fee Hearing Transcript, p.7.

Based on all of the foregoing, it is clear that both *res judicata* and collateral estoppel bar the Plaintiff's action. There is no question that the Retention Order and the Final Fee Order bar the relief sought. In each instance, there is no dispute this Court had jurisdiction, indeed sole jurisdiction, to consider the relief sought, or that the relief granted did not fully comply with due process. Second, both the Retention Order and the Final Fee Order were final with respect to the particular issues addressed. At the retention hearing, the parties raised, and the Court specifically considered, at least some of the services provided by Raymond James to the Debtors prior to the Petition Date and the payment to Raymond James for those services. The Committee had ample time to raise any objections or reserve any rights with respect to any of the services provided by Raymond James pre-petition and was clearly informed as to the facts of the pre-petition relationship.[10] At the final fee hearing, the Court expressly considered the nature and quality of the more recent of those pre-petition services and the payment for those services when

---

[10] The Court is not suggesting that in every instance in which a pre-petition relationship or payment is disclosed that the order approving retention will be a bar to future claims that could have been raised with respect to the disclosures. *Cf. In re BCP Mgmt.*, 320 B.R. 265 (Bankr. D. Del. 2005). The inquiry should consider the nature and extent of the disclosure and the timing of the disclosure in relation to the final retention hearing to determine whether there was any true opportunity for a party to evaluate whether there is a possible claim for which, at least, a reservation of rights should be made. *Accord In re James River Coal Co.*, 2008 WL 764215; *Schulte, Roth & Zabel*, 2006 WL 1643329. In the instant case, the record is very clear that the Committee had full knowledge of the nature and extent of the pre-petition relationship between Raymond James and the Debtor, had ample opportunity to, and actually did, raise objections to a part of that pre-petition relationship, and could have, but chose not to, pursue objections such as those raised in the complaint at the time this Court conducted the May 17 final hearing on retention.

entering the Final Fee Order. Thus, the nature and extent of the pre-petition services were clearly at issue.

Raymond James asserts, and the Plaintiff has not disputed, that the Committee and Debtors pre-confirmation, and the Plaintiff post-confirmation, are related to such an extent that it would be appropriate to hold that the parties are identical. Pursuant to the Confirmation Order, the plaintiff, Mr. Welt, was identified as "the sole responsible officer and director for each of the Debtors." The Confirmation Order transferred all the property of the Debtors, including all litigation claims, to the Liquidating Trust. The Plaintiff was appointed as trustee of the Liquidating Trust. The Confirmation Order confirmed that the Liquidating Trustee was to prosecute, as appropriate, all estate litigation claims. Accordingly, the Plaintiff stands in the shoes of the Debtors. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006). *But see Shulte, Roth & Zabel*, 2006 WL 1643329. Moreover, just as the Committee served the unsecured creditors as their representative and fiduciary, under the Liquidating Trust upon which the Plan is centered the Plaintiff serves as a representative of, and fiduciary to, the beneficiaries of the Liquidating Trust – the unsecured creditors. Thus, the Plaintiff stands equally in the shoes of the Committee for the purposes of issue and claim preclusion.

Finally, the claims in the retention motion and the final fee application on the one hand, and the relief sought in the complaint, are the same. As noted earlier, the details of Raymond James' pre-petition efforts on behalf of the Debtors and the payment for those services were well-vetted prior to the retention hearing. Indeed, the Committee raised the amount of some of those pre-petition fees in its objection to Raymond James' retention, not because the Committee

believed those fees unreasonable, but rather, to illustrate by contrast how unreasonable were the proposed post-petition monthly fees.

## CONCLUSION

Under these circumstances, the Court finds that the complaint challenging the reasonableness of the pre-petition fees including the quality of the services for which these fees were paid, is barred by *res judicata*, the issue of the reasonableness of those pre-petition fees being a claim that was based on the same nucleus of operative facts as those considered at the time the retention motion and the fee application were heard.

Moreover, there is no question that the final fee application is based upon the same factual predicate as the Debtors' pre-petition relationship with Raymond James. Indeed, the record is clear that a significant part of that pre-petition relationship played a meaningful, if not integral, part in the Final Fee Award, which is why relief sought in the complaint is barred not only by *res judicata*, but also by collateral estoppel.

It is accordingly ORDERED:

(1) The Motion to Dismiss is Granted.

(2) Because Plaintiff cannot fashion a prayer for relief based on the facts, there is no purpose served in giving Plaintiff an opportunity to amend its complaint.

(3) The complaint is dismissed with prejudice.

# # #

Copies furnished to:
John B. Hutton, Esq.
Scott A. Underwood, Esq.

*Attorney Hutton shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*